**Commonwealth v. Ebling**

*Joseph Klinefelter, Assistant District Attorney*, for Commonwealth.
*Jane G. Penny*, for defendant.

DOWLING, *J.*, December 22, 1978—Discord followed a harmonious relationship when defendant's incessant stereo playing caused his next door neighbors (the Greens) to voice their objections to the police. They apparently felt, as did two of Shakespeare's famous English Kings; the Plantagenet Richard II: "How sour sweet music is, When time is broke, and no proportion kept!" and the Lancasterian Henry VI: "How irksome is this music to my heart! When such strings jar, what hope of harmony?"

Augmenting the situation was the concern for an aged and invalid parent who resided with them. Signs had been posted advising that the elderly lady was in special need of peace and quiet—a Vivaldi concerto, a Haydn symphony, maybe even a little Wagner but not the dissonance of disco or rock and roll; yet the sounds poured forth, the complaints continued and defendant's agitation increased until finally on June 6, 1978, he entered his neighbors' backyard shouting and shaking his fist at Mrs. Green who was but a foot from him. When Mr. Green appeared, he was offered a "knuckle sandwich" and, by way of encore, defendant repeated the offer from the witness stand during the trial. In addition, on at least two occasions, Ebling spat on the windshield of Mr. Green's car while the vehicle was occupied by its owner.

Defendant was charged with two counts of harassment, a summary offense, found guilty in a hearing before a district justice and fined $150 on each count. He appealed and a trial de novo was held in the court of common pleas, also resulting in a guilty verdict with the same total of $300 in fines and an additional sentence of 30 days in prison. Motions have now been filed for arrest of judgment, a new trial, and modification of sentence.

The harassment statute[1] reads:

"Harassment

"A person commits a summary offense when, with intent to harass, annoy or alarm another person: (1) he strikes, shoves, kicks, or otherwise subjects him to physical contact, or attempts or threatens to do the same; or (2) he follows a person about in a public place or places; or (3) he engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose."

Reviewing the evidence, we are satisfied that it amply sufficed to support a conviction under the above statute. The repeated barrages of stereo sound, verbal and otherwise oral offensives, and gestured threats of hand-to-hand combat amount to a course of conduct calculated to alarm and annoy the Greens. Defendant's shaking his fist at Mrs. Green and the threat to Mr. Green qualify by themselves as prohibited conduct under subsection (1), even absent a sustained course of conduct.

Defendant's second assignment of error is an allegation that the citation was substantively defec-

---

1. Act of December 6, 1972, P.L. 1482, 18 C.P.S.A. §2709.

tive under Pa.R.Crim.P. 250 in that it inadequately fixed the date of the offenses. The rule distinguishes between "informal" and "substantive" defects: only substantive defects warrant discharge from custody or dismissal of the complaint. The comment to the rule defines substantive defects as including those which prevent the identification of the offender or the offense. Here, though certain incidents did not occur on the date of the citation,[2] defendant was specified by name and events were described so as to put Ebling on notice of the nature of the charges. Since a course of conduct was involved, it would obviously be impracticable to list all the dates involved. In any case, defendant's failure to object to the complaint before trial amounted to a waiver: Com. v. Manni, 223 Pa. Superior Ct. 403, 302 A. 2d 374 (1973); Com. v. Hughlett, 16 Lebanon 30 (1975).

Defendant next contends that his increased sentence was unconstitutionally imposed. The case of North Carolina v. Pearce, 395 U.S. 711 (1969), did hold that where a defendant receives a stiffer sentence after a retrial resulting from appeal to an appeals court, the reasons for such an increased sentence must appear and must be based on identifiable conduct of defendant after the original sentencing. Pearce, however, did not speak to the case in which defendant is resentenced in common pleas court in a trial de novo resulting from the appeal of a summary offense case. The applicable law on that issue was spelled out in Com. v. Moore, 226 Pa. Superior Ct. 58, 312 A. 2d 422 (1973),

2. The spitting incidents occurred about one month before June 6, the date of the complaint issued on the date of the events leading up to the proffered "knuckle sandwich."

wherein the court held that a higher sentence could be imposed in a trial de novo without making the showing required by Pearce, supra.

The Pearce holding was based on the rationale that trial courts, hearing a case for the second time, may impose a harsher sentence vindictively: as punishment for successfully objecting to earlier proceedings. Since a trial de novo amounts to an entirely fresh start, reasons for judicial vindictiveness are eliminated since the trial court is not asked to find error in another court's work. See Colten v. Kentucky, 407 U.S. 104 (1972). The case of Torrence v. Henry, 304 F. Supp. 725 (E.D.N.C. 1969), cited by defendant, has not been followed by the courts of this state or by the United States Supreme Court.

Examining the record, we do agree with defendant's contention that the reasons for sentencing were not stated on the record as mandated by Com. v. Riggins, 474 Pa. 115, 377 A. 2d 140 (1977), and Pa.R.Crim.P. 1405.

Accordingly, defendant's motions are denied and the district attorney is directed to present him for the required coda to his sentence.