471 A.2d 869

**COMMONWEALTH of Pennsylvania**

v.

**Robert F. MINNICH, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued April 6, 1983.

Filed Feb. 10, 1984.

340

David R. Eshelman, Reading, for appellant.

Richard C. Funk, Assistant District Attorney, Reading, for Commonwealth, appellee.

Before SPAETH, WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

This is another in a long series of appeals requiring a determination of that "due diligence" which will entitle the Commonwealth to an extension of time within which to commence trial under Pa.R.Crim.P. 1100(c). Specifically, we are required to determine whether (1) delay in obtaining a correct chemical analysis of a substance believed to be methamphetamine, and (2) a request by the Commonwealth to dismiss all charges, which was taken under advisement by the trial court and ultimately denied, were consistent with due diligence so as to entitle the Commonwealth to an extension of time when trial could not be commenced within one hundred eighty days. We conclude that these delays were not consistent with due diligence and reverse the judgment of sentence imposed following conviction obtained in an untimely trial.

A complaint was filed on February 9, 1979 in which Robert F. Minnich was charged with criminal conspiracy and possession of methamphetamine with intent to deliver or manufacture the same. The run date for Rule 1100 purposes was August 8, 1979. The first preliminary hearing was continued at the request of the Commonwealth because it had not obtained an analysis of the substance which had been seized by the police and which was believed to be methamphetamine. On March 6, 1979, however, a preliminary hearing was held, and the charges were returned to court. An information was filed on April 18, 1979. A pre-trial omnibus motion was heard by the court on June 5, 1979, and relief was denied on July 17, 1979. A trial scheduled for July, 1979 was continued upon motion of the Commonwealth in order to provide time for obtaining another chemical analysis of the substance on which the charges were based. The prosecutor stated that additional laboratory testing was necessary because the Commonwealth had reason to believe that the first analysis had been inaccurate. A new trial date was set for August 6, 1979. At that time, the prosecutor suggested to defense counsel that the charges would be dismissed; and, therefore, the case was not attached for trial. On August 7, 1979, the

Commonwealth filed a written motion to extend the time for trial. On August 17, 1979, the Commonwealth moved to dismiss the charges because the later analysis had demonstrated that the substance in question was not methamphetamine. The trial court took the motion under advisement and did not act on it until October 5, 1979. On that date, the court refused the Commonwealth's motion for dismissal and ordered that the case be tried. On October 26, 1979, a hearing was held on the Commonwealth's pending motion to extend the time for trial and also on a defense motion to dismiss. The defense motion was denied, and the time for trial was extended until December 14, 1979. When the case was subsequently tried nonjury,[1] Minnich was acquitted on a charge of attempt to manufacture methamphetamine,[2] but he was convicted of conspiracy to assist one Joseph C. Guthrie in the manufacture of methamphetamine. Minnich filed a direct appeal from the judgment of sentence.

The pertinent portion of Rule 1100(c) which was in effect in 1979 permitted the granting of an extension "only if trial [could not] be commenced within the prescribed period despite due diligence by the Commonwealth." An analysis of the facts in the instant case might well begin with the observation that not one day of the delay here in issue was caused by the defense. On each and every occasion when the case was to be heard or tried, the defense was ready to proceed. All continuances during this period were granted on motion of the Commonwealth.

On July 17, 1979, a continuance of the trial was granted on motion of the Commonwealth because, after 158 days, the prosecution still wasn't certain whether the substance which appellant was accused of having had in his possession was, in fact, a controlled substance. In order to investigate this issue further, the Commonwealth requested a delay to permit it to seek an additional chemical analysis.

1. All delay after October 15, 1979 was waived for Rule 1100 purposes and is not in issue in this appeal.

2. The information had been amended prior to trial to charge appellant with an attempt to manufacture methamphetamine instead of possession with intent to deliver or manufacture.

Sometime thereafter, the prosecution determined that its chances for obtaining a conviction had been reduced because an additional laboratory analysis disclosed that the first testing had been inaccurate, and that the substance seized by police was not amphetamine. Because of this fact, the Commonwealth decided to discontinue the prosecution; and the case was not tried, as scheduled, on August 6, 1979. Instead, the Commonwealth requested leave of court to dismiss the charges.

The conclusions to be drawn from these events must necessarily be that the trial was not held in July because the Commonwealth was not prepared to proceed. A trial in August was not held because the Commonwealth had decided that it did not wish to proceed. When the trial court, on October 5, 1979, determined that the Commonwealth should not be permitted to abandon voluntarily the charges against appellant, the time for commencement of trial had expired. The reason that the time had expired was not judicial delay, as the trial court seemed to think, but because the Commonwealth had been unable to proceed in July and unwilling to proceed in August. The situation was not one in which trial could not conveniently have been held within 180 days. Trial could readily have been held in July and also in August prior to the run date. That it was not so tried was solely the result of the Commonwealth's inability and/or unwillingness to proceed.

The fact that the criminalist who had made the first laboratory analysis was subsequently discredited, although unfortunate, does not excuse the delay. He was a representative of the Commonwealth, and the delay caused by his inaccurate work must be charged against the Commonwealth; his failure to make an accurate analysis promptly was inconsistent with "due diligence."

In holding that the judgment of sentence must be reversed and appellant discharged, we do not intend to be critical of the manner in which the District Attorney handled the prosecution or of his decision to discontinue prosecution. We hold merely that the circumstances of this case

are not within the purview of Pa.R.Crim.P. 1100(c), which permits the granting of an extension *only if trial cannot be commenced* within the prescribed period *despite due diligence by the Commonwealth.*[3]

The judgment of sentence is reversed, and appellant is discharged.

SPAETH, J., filed a concurring statement.

SPAETH, Judge, concurring:

I agree that due diligence was not shown and that appellant must therefore be discharged. I do not reach appel-

---

**3.** Appellant has raised additional issues relating to (1) an alleged inconsistency in the trial court's findings, (2) an alleged improper signing of the information, (3) an alleged illegality in the procedure by which police obtained and executed a search warrant, (4) evidentiary rulings by the court which held admissible extra-judicial statements made by appellant's alleged co-conspirator, and (5) the court's failure to apply the defense of entrapment. We have examined the arguments advanced by appellant regarding these issues but find them lacking in merit.

Even if the verdicts were inconsistent, as appellant alleges, the law is clear that inconsistent verdicts do not require reversal. *Commonwealth v. Wanamaker,* 298 Pa.Super. 283, 288, 444 A.2d 1176, 1178 (1982); *Commonwealth v. Fox,* 259 Pa.Super. 565, 570, 393 A.2d 970, 973 (1978).

The use of a rubber stamped facsimile of the District Attorney's signature on the information does not require that appellant be discharged. *Commonwealth v. Emanuel,* 501 Pa. 581, 462 A.2d 653 (1983).

As to the use of a ruse to gain admittance to execute a search warrant, see: *Commonwealth v. Decaro,* 298 Pa.Super. 32, 46, 444 A.2d 160, 167 (1982); *Commonwealth v. McCarthy,* 257 Pa.Super. 42, 43–44, 390 A.2d 236, 237 (1978); *Commonwealth v. Regan,* 254 Pa.Super. 555, 557–559, 386 A.2d 89, 91 (1978).

A conspirator's statements are admissible if they are in furtherance of and during the conspiracy, see: *Commonwealth v. Scarborough,* 313 Pa.Super. 521, 528–29, 460 A.2d 310, 313–314 (1983); *Commonwealth v. Basile,* 312 Pa.Super. 206, 213, 458 A.2d 587, 590–591 (1983). The admission of such statements is not prevented by the accused's right of confrontation. See: *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608 (1980).

Finally, as to the type of police involvement which is necessary to constitute entrapment or which is in violation of the accused's right to due process, see: *United States v. Twigg,* 588 F.2d 373 (3d Cir.1978); *Commonwealth v. Danko,* 281 Pa.Super. 97, 108–109, 421 A.2d 1165, 1171 (1980); *Commonwealth v. Stokes,* 264 Pa.Super. 515, 518, 400 A.2d 204, 206 (1979).

lant's several arguments in support of his motion for a new trial.